**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KENOBI RAMIREZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HECTOR LORA AND LUIS GUZMAN, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, AND THE CITY OF PASSAIC, A MUNICIPAL CORPORATION,**<br>**Defendants.** | Civ. No. 18-11230 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Kenobi Ramirez, an officer with the City of Passaic's police department ("PPD") brings this case against the City of Passaic; its mayor, Hector Lora; and its Chief of Police, Luis Guzman. Ramirez alleges that he was retaliated against for several reasons over many years. Most importantly he alleges that he was passed over for promotion to the rank of Sergeant in retaliation for his sister's unsuccessful run for City Council on a ticket opposing Mayor Lora. Defendants now move for summary judgment. (DE 79, 80.)[1] They argue that several of Ramirez's claims are time-barred and that he lacks evidence that his sister's campaign was a substantial cause of his non-promotion. For the reasons set forth below, defendants' motions for summary judgment are **DENIED in part and GRANTED in part**, with the option for defendants to reopen certain fact discovery and shift costs and fees.

---

[1] For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "Compl." | = | Complaint (DE 1) |
| "Pl. Br." | = | Plaintiff's brief opposing Summary Judgment (DE 85-6) |

## I. Background

Plaintiff Kenobi Ramirez has been an officer with the PPD since 2003. (DE 79-2 ¶ 4.) In support of his claims, he points to three critical events. First, he alleges that in 2003 he witnessed Samuel Rivera, who was then the mayor of Passaic, assault a woman.[2] (*Id.* ¶ 6.) He claims that he made a truthful statement about what he saw but then was forced by internal affairs to falsify a statement about the incident. (*Id.* ¶ 7–8.) Shortly thereafter, Ramirez was deployed to Iraq, where he served until 2006. (*Id.*) Upon his return to the PPD in 2006, he was placed in a less desirable shift, and his requests to return to his preferred assignment, the "A Shift," were denied. (*Id.* ¶ 13–15.) Plaintiff believes that the new shift assignment was a form of retaliation for his 2003 "whistleblowing" against Mayor Rivera, and this incident forms the basis for his CEPA claim. (*Id.* ¶ 13.) After Mayor Rivera's term ended in 2008, the issue was resolved when the new mayor switched Ramirez to the A Shift. (*Id.* ¶ 18.)

In 2009, Ramirez filed an internal complaint stating that he faced a hostile work environment because other officers mocked his Dominican accent. (DE 85-1, Ex. A.) Chief Guzman was not named in the complaint and never saw it. (DE 79-2 ¶ 81–82.) At the time, Ramirez stated that he was "delighted with the outcome of the hostile work environment complaint." (*Id.* ¶ 84.) He now claims that he made that statement only to keep the peace with Guzman,

---

[2] As an aid to understanding the chronology, here are the mayors of Passaic during the years encompassed by the allegations:

> Samuel Rivera: July 1, 2001–May 9, 2008 (resigned after conviction on federal charges. Deceased May 1, 2020.)
>
> Gary Schaer: May–November 2008 (acting mayor for interim term until special election)
>
> Alex Blanco: November 2008–November 17, 2016 (resigned following conviction on federal charges)
>
> Hector Carlos Lora: 2016–present (interim mayor, November 17, 2016; elected to regular term May 9, 2017)

who was married to Ramirez's cousin at the time (DE 85-3 ¶ 56.) Ramirez admits that Guzman did not retaliate against him in any way in the eight years that elapsed from 2009, when he filed the hostile work environment complaint, until 2017. (DE 79-2 ¶ 87.)

On May 9, 2017, Passaic held an election for mayor. Kenobi Ramirez's sister, Jeanny Ramirez, ran for Passaic City Council on a ticket headed by Richard Diaz, who sought to replace Mayor Lora. Lora and his entire ticket won that election. Plaintiff Ramirez claims that his sister's unsuccessful run caused Mayor Lora to later block his promotion to sergeant as political payback. (DE 79-2 ¶ 70.)

The City of Passaic is a civil service jurisdiction, meaning that promotions within the PPD are based on the results of an examination administered and graded by the New Jersey Civil Service Commission. (*Id.* ¶ 26–28.) Each time the examination is administered, any eligible officer may take the exam. The scores of the officers who pass the exam are ranked on a list ("the List") by the Civil Service Commission. (*Id.*) The PPD then must decide, based on a variety of factors including budget, how many officers from the List to promote to the next rank. (*Id.* ¶ 30–31.) The PPD, however, is required to promote officers based on their position on the List, and is not allowed to skip. (*Id.* ¶ 26–31.) For example, if five officers are to be promoted to the rank of Sergeant, the PPD must promote the first five officers on the List.[3] When a new examination is given and a new List is generated, the old list is no longer valid and the PPD must promote officers in the same manner, but must use the new List. (*Id.* ¶ 30.) The PPD is also governed by a local ordinance known as the "Table of Organization," which requires that the department employ no more

3 This process was modified slightly in 2014 because the City of Passaic was required as part of the settlement of an antidiscrimination lawsuit to promote three officers to Sergeant regardless of their position on the list. (*Id.* ¶ 53.) After those three officers were promoted, however, the remainder of the promotions followed the order of the List.

than 24 active sergeants but does not require that every sergeant position be filled. (*Id.* ¶ 43.)

Kenobi Ramirez has taken the sergeant's examination three times. In 2010, his score led to his being ranked 31st out of 80 candidates. (*Id.* ¶ 49.) In 2014, the examination at issue in this case, his score led to his being ranked 19th out of 64 candidates.[4] (*Id.* ¶ 52.) The 2014 List was effective from December 18, 2014 to December 17, 2017. (*Id.*) In addition to three officers required to be promoted by a legal settlement, fifteen other officers were promoted from the 2014 List, an unusually large number. (*Id.* ¶ 50, 53–55.) In all, then, eighteen officers were promoted. As of August 29, 2017, those promotions left Ramirez—at number nineteen—as the next candidate in line on what remained of the 2014 List. No other promotions to sergeant were made, however, before that List expired four months later, on December 17, 2017 (or for nine months thereafter). (*Id.* ¶ 60; Compl. ¶ 27.)

In the meantime, in November 2017, Ramirez took the sergeant's examination a third time. This time, his score led him to be ranked 48th on the 2018 List, which was released in May 2018.[5] (DE 79-2 ¶ 66.)

Ramirez's case for retaliation centers on the period between August 29 and December 17, 2017. Ramirez's theory of the case is not that he was skipped over. Rather, he alleges that once he reached the top of the 2014 List, Mayor Lora ordered the PPD to pause all sergeant promotions to make sure that Ramirez would not be promoted to the rank of sergeant. That was done, says Ramirez, in retaliation for Ramirez's actual or perceived support for his

---

[4] Without the settlement requiring the promotion of the three officers, Ramirez would have been sixteenth on the list, but as it ended up, 18 total officers would have to be promoted before he would be next in line.

[5] Technically, there may be a period when the old list has expired but the new list has not yet been released. During that interval, if the city wishes to make a promotion from the expired list, it may ask the Civil Service commission for permission to do so. (Oral Arg. Tr., Apr. 27, 2022, at 2–3.) After the new List is released (here, May 2018), the city is forbidden from making promotions from the old List, whether with or without authorization from the Civil Service Commission. (*Id.*)

sister's political campaign. At that time, the PPD was operating with 22 sergeants; because the department had been allocated a maximum of 24 slots, it could have promoted up to two additional officers to the rank of sergeant, although it was not required to do so.[6] (*Id.* ¶ 61.) Given his place at the head of the 2014 List between August 29 and December 17, 2017, Ramirez would have been entitled to the next sergeant slot filled during that period. (*Id.*)

Ramirez presents no direct evidence that the Mayor held up his promotion based on his sister's 2017 campaign or the May 9, 2017 election.[7] As noted, Ramirez stood at the head of the line for only about three and one half months, from August 29 through December 17, 2017, a period in which no promotions were made. Indeed, even after the 2018 List took effect (and Ramirez was no longer next in line for a promotion), no officers were promoted to sergeant until September 2018. (*Id.* ¶ 69.) In all, approximately one year passed (*i.e.*, from late August 2017 to September 2018) without anyone being promoted to the rank of sergeant, and it was only for the first three months of that period that Ramirez would have been entitled to the next opening.

Ramirez filed this action on June 29, 2018. The complaint consists of five Counts. The first Count, brought under 42 U.S.C. § 1983, alleges that in failing to promote Ramirez, defendants "were retaliating against him for exercising his rights of freedom of association and/or for reporting illegal discriminatory conduct by Guzman." (*Id.* ¶ 36.) The second Count, brought under the New

---

[6] Ramirez asserts that there were, in practice, four potential sergeant openings rather than two, because Sergeants Ortiz and Cabrera were inactive – taking their accrued sick time – before officially retiring in February 2018. (*Id.* ¶ 58–59.)

[7] Indeed, it is unclear from the record if the Mayor even knew Ramirez was next on the list to be promoted. In his certification, submitted in response to this summary judgment motion, Ramirez claims that he had dinner with Mayor Lora to discuss his promotion in January 2017. That date, however, occurred some seven months before the promotions that caused Ramirez to reach the first position on (what was left of) the 2014 List. (DE 85 ¶ 26.) In his earlier deposition testimony, however, Ramirez stated that he never exchanged more than a few words with Mayor Lora. (DE 90-1 at 22–23.) No explanation is given for the discrepancy, or for Ramirez's sudden recall of this event, five years after the fact and in response to a summary judgment motion.

Jersey Civil Rights Act, alleges that in failing to promote Ramirez, defendants "were retaliating against him for exercising his rights of freedom of association." (*Id.* ¶ 40.) The third Count alleges a conspiracy under 42 U.S.C. § 1985 to violate plaintiff's right to freedom of association. (*Id.* ¶ 45.) Count 4 alleges that the city is liable under the doctrine of respondeat superior. (*Id.* ¶ 48.) Finally, Count 5 alleges that the failure to promote Ramirez constituted retaliation for his objection to filing a false report in favor of former Mayor Rivera, and thus violated the Conscientious Employee Protection Act ("CEPA"), NJSA 34:19-1. (*Id.* ¶ 50.)

Defendants filed an answer but not a motion to dismiss, discovery proceeded, and settlement talks reportedly failed. (DE 5, 69.) On November 22, 2021, the City of Passaic filed its motion for summary judgment (DE 79) and defendants Lora and Guzman filed a second motion for summary judgment the next day (DE 80). Ramirez filed a consolidated brief and certification in opposition to the motions for summary judgment (85, 86.) The City and the individual defendants filed reply briefs and a certification. (DE 89, 90, 91.) After oral argument, which took place on April 27, 2022 (DE 92), the Court authorized Ramirez to file a supplemental brief, and he did so (DE 93). The motions are now fully briefed and ripe for decision.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See *Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented

through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III. Discussion

In Part III.A, *infra,* I discuss three issues that can be disposed of quickly. Because Ramirez does not address either his CEPA claim or his § 1985 conspiracy claim in his brief, I consider his opposition to be waived. I nevertheless briefly discuss the reasons for granting summary judgment in favor of defendants on those two courts. I also find that there is no record evidence that Chief Guzman bore any responsibility for the alleged retaliatory non-promotion, and therefore grant summary judgment on all counts in favor of Guzman.

In Part III.B, I move on to the crux of this case: the allegation that the City and Mayor Lora denied Ramirez a promotion in retaliation for his support of his sister's political campaign. There is little dispute as to the surrounding circumstances that Ramirez considers suggestive: the political campaign, the halt in promotions when he reached the top of the list, and so forth. As for direct proof, Ramirez has identified a single issue of fact that rises to the level of materiality: whether Capt. Gentile informed him that political retaliation was the reason for his non-promotion by the City. I therefore must deny summary judgment on Counts 1, 2, and 4 as to the City of Passaic and Mayor Lora. To ensure that the issues are sufficiently explored, however, I will permit defendants to reopen discovery and apply for an award of fees and costs occasioned by plaintiff's belated disclosures.

### A. Preliminary Issues

#### 1. CEPA claim (Count 5)

Summary judgment is an appropriate stage to examine whether claims are barred by the applicable statute of limitations. *See Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016), as amended (Feb. 24, 2016). Because the statute of limitations is an affirmative defense, and because defendants have moved for summary judgment, defendants bear the burden to

demonstrate that Ramirez's CEPA claim is time-barred. *See Richard B. Roush, Inc. Profit Sharing Plan v. New Eng. Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002). I can grant summary judgment on the issue only if I determine that there is no genuine dispute as to any fact material to the statute of limitations issue.

Ramirez makes no argument and adduces no facts to rebut defendants' assertion that his CEPA claim is time-barred. I briefly review the issue and grant summary judgment on this claim for defendants.

CEPA states that "[u]pon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." N.J. Stat. Ann. § 34:19-5. This action was filed on June 29, 2018; thus, if the retaliatory action occurred before June 29, 2017, the claim would be time barred. Here, it is unclear exactly which actions Ramirez claims were taken retaliation for his alleged whistleblowing against former Mayor Rivera, which occurred in 2003. The complaint references shift assignment changes in the aftermath of his statement against Rivera in 2006 (Compl. ¶ 13), and also his failure to be promoted in 2017 (Compl. ¶ 51).

Any claim of retaliation based on the alleged shift assignment changes accrued in 2006. It was long ago time-barred by the one year statute of limitations.

The allegedly wrongful denial of a promotion, however, dates from August–December 2017, within one year of the filing of this action in June 2018. It nevertheless fails as the basis for a CEPA claim. Ramirez has presented no evidence whatever connecting his alleged whistleblowing against former Mayor Rivera in 2003 to a different Mayor's denial of a promotion fourteen years later. I find therefore that Ramirez could not meet his burden of proof on this issue at trial. *Katz*, 972 F.2d at 55.

Summary judgment is granted to the defendants on Count 5, the CEPA claim.

**2. § 1985 conspiracy claim (Count 3)**

Ramirez makes no argument to rebut defendants' assertion that his conspiracy claim fails as a matter of law. I briefly review the issue and grant summary judgment on this Count for defendants.

To make out a violation of 42 U.S.C. § 1985(3) the plaintiff must prove four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983). Here, Ramirez has presented evidence of none of these elements, but his claim also has a more fundamental problem: The Third Circuit has held that § 1985(3) does not apply to political affiliation claims like this one. *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) ("[U]nlike discrimination against a class on the basis of race, sex, or mental retardation, discrimination on the basis of political affiliation is not, as a matter of law, discrimination so invidious such that § 1985(3) would apply.")

Ramirez therefore cannot state a § 1985 claim and I must grant summary judgment in favor of the defendants On Count 3.

**3. Claims against Defendant Guzman**

I consider separately the evidence against Chief Guzman. All record evidence demonstrates that the number of promotions was determined by the Mayor. As noted below, the direct evidence of political payback is an alleged statement by Deputy Chief Gentile, which implicated the Mayor but not Guzman. Indeed, as part of his case against the Mayor, Ramirez cites a statement by Chief Guzman to the effect that it is not Guzman who was responsible for promotions, but "the other side of the building, meaning City Hall where the mayor is." (DE 93-3 at 184.) There is no evidence that Guzman was involved in any way in any political decision to withhold Ramirez's

promotion. I therefore grant summary judgment in favor of Chief Guzman on all counts in which he is named, and dismiss him from the case.

**B. Non-promotion claims (Counts 1, 2, 4) as to the City and Lora**

We arrive at the heart of the case. Ramirez alleges that the reason for his failure to be promoted was his support of his sister's campaign for city council on the Diaz ticket.[8] I consider that claim, in its various guises, as asserted against the remaining defendants, *i.e.*, the City and Mayor Lora.

To establish a claim of discrimination based on political association, a plaintiff must prove that "(1) [he] was employed at a public agency in a position that does not require political affiliation, (2) [he] was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 271 (3d Cir. 2007) (citing *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)).[9] If the plaintiff can prove those three elements of a prima facie case, defendants can nevertheless "avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." *Galli*, 490 F.3d at 271.

At least for current purposes, the first two elements of a prima facie case are uncontested; Ramirez is a public employee, and it is not controversial that the First Amendment protects political speech and association. All parties focus on the third element, *i.e.*, whether Ramirez's protected political conduct

---

8 Ramirez also asserts, somewhat vaguely, that the denial of promotion was retaliation for the report he gave regarding former Mayor Rivera or for his 2009 hostile work environment complaint. (Pl. Br. at 2.) Both of these actions, however, were years removed from the alleged retaliation, and Ramirez provides no evidence that they influenced the alleged decision not to promote him. I therefore focus on the less implausible allegation that Ramirez's lack of promotion was caused by his sister's candidacy in the May 2017 election.

9 The same elements apply to Ramirez's New Jersey Civil Rights Act claim (Count 2). With few exceptions, the NJCRA and 42 U.S.C. § 1983 have been construed in parallel. *Perez v. Zagami, LLC*, 218 N.J. 202, 212 (2014).

"was a substantial or motivating factor in the government's employment decision." *Galli*, 490 F.3d at 271; *Katz*, 972 F.2d at 55.

Defendants point out that Ramirez's claim is a convoluted and not particularly plausible one, based on his non-promotion during a brief window of eligibility from August 29 through December 17, 2018, after which his score on the next test placed him out of the running. Defendants stress that, having filled twenty-two sergeant's positions, they were in no way obligated to fill a twenty-third, and they did not skip over Ramirez to promote someone ranked further down the List. Rather, the plaintiff's theory is that Mayor Lora deliberately paused *all* sergeant promotions out of a desire to harm Ramirez.[10]

Ramirez has no personal knowledge that Mayor Lora and the City made such a politically motivated decision. (DE 79-2 ¶ 71.) Nor did any such evidence emerge before fact discovery closed pursuant to the schedule set by the Magistrate Judge. (DE 71.) In response to the summary judgment motions, however, Ramirez filed an affidavit containing new facts. Now, he recalls that Deputy Chief Gentile informed him in a church parking lot in September or October 2017 that the reason for his non-promotion was his support for his sister's political campaign. (DE 85 ¶ 25.) Gentile occupies a fairly high supervisory rank in the police department, and this disputed fact could support a finding that defendants' failure to promote Ramirez constituted political retaliation by the City or the Mayor—*if* a jury found that Gentile made the statement and *if* they also found a basis to believe that Gentile knew what he was talking about.[11]

---

10 For the scheme to work, they presumably must also have foreseen that Ramirez would score less well on the 2018 test.

11 There are three other new alleged facts in Ramirez's affidavits that may be generally relevant but which do not create a disputed issue of material fact.

First, as evidence that Mayor Lora knew that Ramirez was next on the list for promotion, Ramirez claims that he had a dinner with Mayor Lora at a restaurant in Clifton NJ in January 2017, when he was not yet next on the list for promotion. (DE 85 ¶ 26.) For unexplained reasons, Ramirez seems to have entirely forgotten about this meal during his deposition when he was asked repeatedly about his interactions

Defendants argue that the evidence of this church parking lot conversation should be set aside, citing the sham affidavit doctrine. (DE 91 at 11–12.) It is a close question, and the circumstances raise doubts about Ramirez's credibility that could be exploited by the defense. Nevertheless, I always prefer to get to the merits, and I will rule within my discretion that the sham affidavit doctrine should not be applied here.

The sham affidavit doctrine provides a narrow exception to the usual rules of summary judgment. That doctrine "refers to the trial courts' practice of disregarding an offsetting affidavit that is submitted in opposition to a motion for summary judgment when the affidavit contradicts the affiant's prior deposition testimony." *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004); AFFIDAVIT, Black's Law Dictionary (11th ed., 2019) (stating that a sham affidavit is an "affidavit that contradicts clear testimony previously given by the

---

with Mayor Lora. Whether or not this meal occurred is not particularly probative, however. If anything, it tends to cut against Ramirez's discrimination claim; why would Mayor Lora have a pleasant dinner with a political enemy against whom he was actively retaliating?

Second, Ramirez now submits an affidavit from Officer Ragsdale, who is also suing the City for his own non-promotion. Ragsdale's affidavit states that Captain Pellot told Ragsdale "at some point in 2017" that Ramirez and Ragsdale were *both* "believed 'to be aligned with [Richard Diaz' by the City and police administration, and that was an impediment to our promotion." (DE 86 ¶ 3.) This vague, secondhand statement relating a "belief" that is attributed to no one in particular, does not create an issue of material fact. It is not claimed that Pellot, who has the rank of Captain, had any influence over the promotion process. Nor does the record suggest that Pellot had any basis for knowledge about internal decision making in the Mayor's office.

Third, Ramirez cites a statement by Chief Guzman to the effect that it is not Guzman who is responsible for promotion decisions, but "the other side of the building, meaning City Hall where the mayor is." (DE 93-3 at 184.) This, too, fails to raise a material, disputed issue of fact. Although Ramirez attempts to inflate this statement into an admission that Mayor Lora was blocking his promotion, the statement was merely one of fact: all agree that it is the Mayor's decision as to how many officers to promote, within the legal constraints discussed above.

A fourth alleged admission, "PO Fernandez told Plaintiff that DC Gentile asked her to drop a criminal charge against the Mayor's son a month before he was promoted to Deputy Chief without ever taking or passing the exam," is not relevant. (Pl. Br. at 7.)

same witness, usu. used in an attempt to create an issue of fact in response to a motion for summary judgment.") To be covered by the sham affidavit doctrine, the affidavit testimony must actually *contradict* previous deposition testimony, not merely differ from it or be in tension with it. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 210 (3d Cir. 2022) ("the sham affidavit rule permits striking only contradictory statements in later-provided affidavits or declarations"); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (referring to sham affidavits as "contradictory affidavits").

Indeed, even a directly contradictory affidavit is not automatically excluded. Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2738 (4th ed.) (a witness's affidavit will not be automatically excluded because it conflicts with the witness' earlier or later deposition). The court must use its judgment, though it generally should take deposition testimony as more reliable than affidavit evidence, because the former has the benefit of cross examination. *Id.*; *U.S. v. Johns-Manville Corp.*, 259 F. Supp. 440, 456 (E.D. Pa. 1966).

The purpose of the sham affidavit doctrine, then, is to prevent a party from manufacturing an issue of fact to defeat summary judgment, especially after the opposing party has spelled out its case in its summary judgment motion. *See In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006); *Perma Rsch. & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") Mayor Lora and the City argue that this is precisely what Ramirez has done, and that argument, addressed to a finder of fact, might prove persuasive. I, however, am operating under a summary judgment standard, and I must conclude that Ramirez's statement in his affidavit regarding his conversations with Gentile did not so directly contradict his deposition testimony that the affidavit should be excluded.

In his affidavit, Ramirez describes two conversations with Deputy Chief Gentile. First, in the summer of 2017, Ramirez claims that Gentile told him that Gentile "did not see why I would not get promoted if someone retired." (DE 85 ¶ 25.) Second, after two sergeants retired but Ramirez was not promoted, Ramirez claims he spoke again to Gentile in a church parking lot. In that parking lot conversation, Gentile allegedly informed Ramirez that "Officer Ragsdale and I were not getting promoted because we had been supporting Richard Diaz's campaign for Mayor (in opposition to Mayor Lora)." (*Id.*) A reference to the first conversation appears in Ramirez's deposition. (DE 91-1, Ex. A at 131.) The second conversation in the church parking lot, however, is the critical one, and it is not referred to anywhere in Ramirez's depositions.

On October 20, 2020, before Gentile was deposed, Ramirez was asked in his deposition about why he believed his non-promotion was a result of his support for his sister's political campaign. Ramirez responded vaguely that "a couple of people" had told him that his support for his sister's political activity caused the non-promotion. (DE 91-1, Ex. A at 112–113.) Defense counsel pressed Ramirez for the identity of those "couple of people." Ramirez first responded that he did not remember; he then identified one of the two as Lucho Candelaria, a patrol officer, but could not remember the identity of the second person. (*Id.* at 113.) Later in the same deposition, Ramirez mentioned his first conversation with Gentile (not the second, church parking lot conversation), in which Gentile allegedly said that if someone retired, Gentile saw no reason why Ramirez would not be promoted. (*Id.* at 131.) Defendants find it extremely odd that this did not jog Ramirez's memory that Gentile, a high-ranking police official, later admitted the essentials of Ramirez's claim, stating that he was not promoted because of political retaliation by the mayor.

Ramirez's counsel made at least a passing reference to the parking lot conversation a few months later, in the deposition of Gentile on December 8, 2020. After referring to the church parking lot but without specifying an approximate date, Ramirez's attorney asked Gentile, "Did you ever tell Officer Ramirez that because his sister Jeanny had run on the Diaz ticket against

Lora, he couldn't expect to get promoted?" (DE 93-1, Ex. A at 69.) Gentile denied it: "That would not be a conversation that I would recall to have." (*Id.*) Ramirez was not again deposed after Gentile was deposed.

Gentile's dramatic parking-lot admission, defendants note, disappeared from Ramirez's memory during his deposition, only to conveniently resurface in January 2022, when the defendants' summary judgment filings cited a lack of probative evidence supporting the central allegation of Ramirez's case.[12] It might be said—defendants do say it—that Ramirez's sudden, belated memory of the 2019 church parking lot meeting is highly suspect. Still, in his depositions, Ramirez never actually contradicted his current testimony; that is, he never actually *denied* that Gentile had made such a statement. He merely said that two people had made such a remark, and that he could not remember the identity of one of them. Defendants make the commonsense point that it would have been natural for Ramirez to bring up the church parking lot conversation in response to the questions he was asked, and any competent cross-examiner might call Ramirez's credibility into question on that basis. That, however, is not quite enough to invoke the narrow, sham affidavit exception to the usual summary judgment standard, which requires the court to identify, not resolve, issues of fact.

With the new affidavit as part of the record, Ramirez has successfully raised a disputed issue of material fact: whether Deputy Chief Gentile told him in September or October 2017 that he was not promoted as a result of his support of his sister's campaign. To be truly significant, of course, that admission would have to be accompanied by some evidence that Gentile, if he made the statement, was not merely, *e.g.,* repeating rumors, but was speaking from knowledge about the Mayor's decision.

---

12 Ramirez's affidavit is undated but was filed on January 7, 2022. (DE 85.)

**C. Option to Reopen Discovery**

Although I do not apply the sham affidavit exception, I do note that the plaintiff has impermissibly laden the record with new information after the close of fact discovery. I will not now send the matter to trial based on a single sentence of an affidavit that emerged at the last instant and was not subject to cross examination.

I will therefore grant defendants Lora and the City the option to reopen fact discovery if that is their wish. The court will also entertain an application to have plaintiff pay the additional costs and attorneys' fees incurred by defendants as a result of this belated disclosure.

## CONCLUSION

For the reasons set forth above, Defendants' motions for summary judgment (DE 79, 80) are **GRANTED in part and DENIED in part**. Both motions are **GRANTED** with regard to Counts 3 and 5, and the individual defendants' motion (DE 80) is **GRANTED** with regard to defendant Guzman. The motions are otherwise **DENIED** as presented, with the proviso that defendants may, if they wish, reopen fact discovery and apply to shift the costs and fees they incurred as a result of plaintiff's belated disclosures in response to the summary judgment motions.

An appropriate order follows.

Dated: May 16, 2022

/s/ Kevin McNulty

Kevin McNulty
United States District Judge